UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MOHAMED QASEEM KAKAR,

                                Plaintiff,

          v.

UNITED STATES CITIZENSHIP AND          Civil Action No.
IMMIGRATION SERVICES,                      CV-16-5032 (KAM)

                                Defendant.

-------------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

                                                           RICHARD P. DONOGHUE
                                                           United States Attorney
                                                           *Counsel for Defendant*
                                                            Eastern District of New York
                                                           271 Cadman Plaza East, 7th Floor
                                                           Brooklyn, New York 11201

                                                           January 29, 2018

LAYALIZA SOLOVEICHIK
Assistant United States Attorney
(Of Counsel)

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.  USCIS'S APRIL 2016 DECISION SHOULD BE UPHELD ...................................... 2

    A.  USCIS Properly Denied The Adjustment Application ..................................... 2

        1.  USCIS Properly Found Plaintiff Inadmissible On The First Ground .... 2

        2.  USCIS Properly Found Plaintiff Inadmissible On The Second, Wholly Independent, Ground ................................................................. 6

    B.  USCIS Is Not Precluded From Denying The Adjustment Application On The Grounds Of Terrorism-Related Inadmissibility ............................................... 11

CONCLUSION ............................................................................................................................. 18

**PRELIMINARY STATEMENT**

Defendant U.S. Citizenship and Immigration Services ("USCIS"), by its attorneys Richard P. Donoghue, United States Attorney for the Eastern District of New York, Layaliza Soloveichik, Assistant United States Attorney, of counsel, respectfully submits this reply memorandum of law in further support of USCIS's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff Mohamed Qaseem Kakar seeks review, under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), of USCIS's April 5, 2016 decision denying his application for adjustment of status from asylee to lawful permanent resident (the "2016 Decision").[1] Given that adjustment of status requires the asylee to be admissible, and given, *inter alia*, that plaintiff stated that he had fought with a Kalashnikov for the Taliban against its foes, and had washed, cleaned, and cooked for the Taliban for 25 days, USCIS found plaintiff inadmissible on two independent grounds: (i) engaging in terrorist activity, as defined under 8 U.S.C. § 1182(a)(3)(B)(iii)(V), by using a weapon with intent to endanger, directly or indirectly, and (ii) engaging in terrorist activity, as defined under 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(cc), by providing material support to the Taliban, a Tier I terrorist organization. As set forth in USCIS's opening memorandum of law ("Def. Mem.") in support of its dispositive motion, the 2016 Decision was not arbitrary or capricious and, contrary to plaintiff's claim, res judicata did not preclude inadmissibility findings.

Plaintiff's opposition to USCIS's cross-motion and reply in further support of his own motion ("Pl. Opp.") fails to contravene these arguments. Instead, plaintiff mischaracterizes or misapplies statutes and doctrines, or simply rehashes the same arguments he made in his opening

---

[1] The Complaint also purported to seek review of USCIS's decision under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* ("INA"). However, USCIS had shown that plaintiff failed to identify any INA provision that would authorize judicial review, *see* Def. Mem. n.1, and plaintiff's opposition papers thereto fail to rebut this position.

papers as to why the 2016 Decision was allegedly arbitrary or capricious. Also, in again arguing that USCIS was precluded from finding plaintiff inadmissible on the first ground (use of a weapon), plaintiff's opposition to USCIS's cross-motion switches preclusion doctrines altogether – from res judicata to collateral estoppel. However, not only does plaintiff fail to establish prerequisites for collateral estoppel – given that he cannot show that the parties actually litigated, and that the immigration judge actually decided, terrorism-activity-based inadmissibility at the asylum stage – but also his argument rests only on the first inadmissibility ground (use of a weapon). He does not even attempt to argue that USCIS was collaterally estopped from determining the second, independent inadmissibility ground (material support).

This Court should, therefore, grant USCIS's cross-motion for summary judgment, deny plaintiff's motion for summary judgment, and dismiss this action in its entirety.

## ARGUMENT

### I. USCIS'S APRIL 2016 DECISION SHOULD BE UPHELD

**A.     USCIS Properly Denied The Adjustment Application**

As USCIS argued, and plaintiff does not dispute, under 8 U.S.C. § 1159(b)(5), an asylee is ineligible for adjustment to permanent residence unless he is admissible "at the time of examination for adjustment of such alien."[2] *See* Def. Mem. 14; *see generally* Pl. Opp. Plaintiff also does not dispute that USCIS found him inadmissible on two independent grounds, for two independent forms of terrorism-related conduct as defined by the INA. *See id.*

### 1.     USCIS Properly Found Plaintiff Inadmissible On The First Ground

As an initial matter, plaintiff does not, and indeed cannot, dispute that an alien is

---

[2] Plaintiff does not challenge that the INA so provides, though he contends that, here, USCIS was precluded from making one of the admissibility determinations. *See* Pl. Opp. 1-5, 10-12. This argument is addressed *infra* at Part I.B.

2

inadmissible for "use of any . . . firearm, or other weapon . . . with intent to endanger, directly or indirectly, the safety of one or more individuals." 8 U.S.C. § 1182(a)(3)(B)(iii)(V); *see* Pl. Opp.

Instead, plaintiff argues that there is "no evidence" in the record that plaintiff used a firearm "with intent to endanger," and that USCIS "does not dispute" this fact. Pl. Opp. 13.  Plaintiff errs on both counts. The record reflects plaintiff's statements in 1999 and 2000 that he had used a Kalashnikov against Shiites in the service of the Taliban, further clarifying, when asked whom he had "used the gun against," that he had used the Kalashnikov against men, but not women and children; moreover, when asked if he had engaged in "actual fighting," he replied in the affirmative.  *See e.g.*, AR 163, 158. USCIS's 2016 Decision noted these statements. AR 3-4. USCIS further observed that, when its 2013 Notice of Intent to Deny (NOID) had pointed out to plaintiff that his admitted conduct constituted terrorist activity (AR 24), plaintiff submitted a responsive affidavit that, for the first time, asserted that he had "never intended to hurt or kill anyone," inasmuch as he had "fired the gun at nobody" (AR 31). *See* AR 3-4. USCIS found "not credible" the inconsistency between the prior averrals and the recent averral that plaintiff had "fired at nobody." AR 3-4. The change, USCIS reasoned, was more striking since it had only been made in response to the NOID citing the problem of using a weapon with intent, *see* AR 3, and thus appeared to be a transparent, if unavailing, maneuver to neutralize damaging testimony, *see* AR 4.

Not only does USCIS's 2016 Decision lay out the above, *see* AR 3-4, but also USCIS's memorandum asserted precisely the same argument, *see* Def. Mem. 14-15.[3] Thus, not only does the record support intent, but also it is plainly untrue that USCIS conceded the lack of intent.

Equally unavailing is plaintiff's argument that USCIS's weapon-use-based inadmissibility

---

[3] USCIS's memorandum further argued that plaintiff's counsel's theorizing as to what might have occurred on the field of battle, in a post-hoc attempt to reconcile the inconsistent averrals, did not constitute evidence and so was not pertinent. *See* Def. Mem. 14-15. Plaintiff does not rebut this.

3

finding was arbitrary and capricious because – while the INA mandates that such use must also either be "*unlawful* under the laws of the place where it is committed" or "*unlawful* under the laws of the United States," 8 U.S.C. § 1182(a)(3)(B)(iii) -- here plaintiff's military service with the Taliban effectively meant that plaintiff was *lawfully* using his weapon just as one would lawfully do while serving in the U.S. armed forces. *See* Pl. Opp. 14-16. Inasmuch as this simply rehashes the same argument plaintiff had made in his opening papers, USCIS incorporates by reference its counterarguments thereto in its memorandum in opposition. *See* Def. Mem. 16-17.[4]

In any event, plaintiff's analogy of putative lawfulness under the rubric of "governmental military service" lacks a necessary predicate, in that plaintiff has not established that the Taliban was in fact recognized by the United States as the government of Afghanistan in the relevant period. All plaintiff relies on is dicta in two cases as to which the Court is asked to take "judicial notice." *See* Pl. Opp. 14 n. 8. However, it is well established that judicial notice of opinions may only be taken to establish the fact that filings were made, but "not for the truth of the matters asserted" in such filings. *See Carbrera v. Schafer,* 178 F. Supp. 3d 69, 73 (E.D.N.Y. 2016) (citing *Kramer v. Time-Warner*, 937 F.2d 767, 774 (2d Cir. 1991)).[5] Thus, plaintiff fails to establish that

---

[4] To the extent that plaintiff attempts to rebut part of the USCIS's counter argument, plaintiff is unsuccessful. USCIS has argued that plaintiff's analogy of his conduct with the Taliban militants to patriotic, lawful U.S. military service is flawed because it would *not* be lawful "under the law of the United States" for the U.S. military to "militarily oppress religious persons," let alone to do so in favor of one religion over another. Def. Mem. 16. Plaintiff asserts that there is no evidence that he "militarily oppressed religious persons." Pl. Opp. 15. However, he misstates USCIS's argument. USCIS was arguing – given plaintiff's own assertions throughout the early part of the record as to the basis for his application for asylum – that the *Taliban* was the one engaging in such oppression, both by impressment of non-Sunni persons because they were non-Sunni and by forcing such persons to fight Shiites because they were non-Sunni. Because it would *not* be lawful in the United States for the military to engage in such conduct, the alleged lawfulness of plaintiff's use of weapons in the Taliban militia cannot be established via an analogy to the U.S. military.

[5] In any event, dicta is not a legitimate source of judicial notice as to a geopolitical assessment of the government in a war-torn country. Further, these cases are inapposite. To wit, plaintiff's citation to the first case, *Hedges v. Obama*, 724 F.3d 170, 190 n.125 (2d Cir. 2013), as plaintiff

4

bearing arms for the Taliban was lawful in the guise of "governmental military service."[6]

In sum, in its 2016 Decision, USCIS offered a reasoned application of the law to the evidence of record to find plaintiff inadmissible on "use of a weapon" grounds, and thus ineligible

---

himself notes, addresses events in 2001, which is long after the relevant period; plaintiff's interaction with the Taliban necessarily occurred prior to his seeking asylum at the U.S. border upon his arrival without valid entry documents in November 1999, *see* AR 187. Moreover, plaintiff incorrectly implies that *Hedges* found "the Taliban . . . was the government of Afghanistan" at the time the AUMF was enacted in 2001. Pl. Opp. 14 n.8 (citing 724 F.3d at 190 n.125). In fact, the court in *Hedges* did not determine the Taliban to be the Afghan government at that time. In language not cited by plaintiff, the court, in determining the relevant AUMF authority, noted that the "[AUMF] provision *concerned with the organizations* responsible for 9/11 – Al Qaeda and the Taliban – plays a role," 724 F.3d at 190 (emphasis added), adding, in the footnote that had been bowdlerized by plaintiff to wrongly imply that the court had concluded that the Taliban *was* the Afghan government: "use of force against the Taliban *may* draw support *also* from the AUMF's reference to 'nations' *insofar* as it was the government of Afghanistan," *id.* n.125 (emphasis added). In sum, the court did *not* conclude that, as plaintiff would have it, the Taliban "was the government" of Afghanistan. Equally inapposite is the second case, *Tel. Sys. Int'l v. Network Telecom PLC,* 303 F. Supp. 2d 377, 379 (S.D.N.Y. 2003), in which the dicta did concern 1999, but appears on its face to be based on deposition testimony of one "Bayat," otherwise unidentified, in litigation between private parties. To the extent plaintiff implies that private parties to a litigation establishing *for purposes of that litigation* geopolitical facts (based, moreover, on the testimony of an unknown person) are granted pursuant to the doctrine of "judicial notice" powers constraining the federal government in unrelated litigation to accept the same geopolitical view – particularly on an issue within the exclusive authority of the Executive branch -- plaintiff wildly distorts the scope of judicial notice. *See Zivotovsky v. Kerry,* 135 S. Ct. 2076, 2084, 2086, 2094 (2015) ("[Recognition] is a formal acknowledgement that a particular entity possesses the qualification for statehood or that a particular regime is the effective government of a state . . . Recognition is a topic on which the Nation must speak with one voice . . . [and] the power to recognize or decline to recognize a foreign state and its territorial bounds resides in the President alone.") (citations and internal ellipses and quotation marks omitted). To be clear, USCIS does *not* agree that the Taliban was the Afghan government in 1999, let alone in 2001. *See, e.g.*, Robert A. Seiple, Ambassador-at-Large for International Freedom, statement to the Subcommittee on International Operations and Human Rights of the House Committee on International Relations, October 6, 1999, *available at* https://www.state.gov/s/l/65767.htm (last visited Jan. 29, 2018) ("The Secretary also intends to identify the Taliban in Afghanistan, which we do not recognize as a government . . . as particularly severe violators of religious freedom."); The 2001 Report on International Religious Freedom, *available at* https://www.state.gov/j/drl/rls/irf/2001/5533.htm (last visited Jan. 29, 2018) ("Although the United States does not recognize any of the warring factions as the Government of Afghanistan, U.S. government officials have raised religious freedom issues with representatives of the factions.")

[6] Plaintiff does not distinguish USCIS's legal authority establishing that, in the event of factional warfare, taking up arms in a resistance group is *not* lawful. *See* Def. Mem. 16-17; Pl. Opp. 15-16.

5

for status-adjustment, and plaintiff has failed to rebut this. Under the deferential standard of APA review afforded agency decisions, the Second Circuit requires that the agency decision be upheld where, as set forth above, the agency has identified "a rational connection between the facts found and the choice made." *Karpova v. Snow,* 497 F.3d 262, 268 (2d Cir. 2007). The Court should decline to disturb the 2016 Decision denying plaintiff an adjustment of status.

> 2. **USCIS Properly Found Plaintiff Inadmissible On The Second Ground**

Moreover, even assuming *arguendo* that plaintiff were *not* inadmissible on use-of-a-weapon grounds, plaintiff has failed to establish that USCIS acted arbitrarily and capriciously in finding him inadmissible on separate, independent, terrorism-related grounds.

Plaintiff does not dispute that "terrorist activity" is also defined in the INA as "an act that the actor knows, or reasonably should know, affords material support" to a "terrorist organization," including Tier I terrorist organizations, described in 8 U.S.C. § 1182(a)(3)(B)(vi)(I) -- or as the statute puts it "subclause (I)" of "clause (vi)." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(cc); *see generally* Pl. Opp. Plaintiff also does not dispute that § 691(d) of the Consolidated Appropriations Act ("CAA") of 2008, Pub. L. No. 110-161, 121 Stat. 1844 (Dec. 26, 2007), designated the Taliban a Tier I terrorist organization for purposes of 8 U.S.C. § 1182(a)(3)(B).

Instead, as in his opening brief, plaintiff once again contends that § 691(f) of the CAA did not make retroactive to 1999 – the period of plaintiff's interaction with the Taliban – the Taliban's designation as a Tier I terrorist organization, because emendations to the terrorist-activity inadmissibility grounds predating the CAA had more limited retroactivity provisions, and § 691(f) could not override those provisions. *See* Pl. Opp. 16-18. This contention is incorrect. Not only is the relevant retroactivity provision for the *CAA's* Tier I designation of the Taliban obviously the *CAA's own* retroactivity provision, but also that retroactivity provision, § 691(f), makes explicit

6

that § 1182(a)(3)(B) (containing the terrorism-activity bars) as amended by § 691 (including the § 691(d) designation of the Taliban as a Tier I terrorist organization) applies retroactively to "acts . . . constituting a ground for inadmissibility . . . occurring or existing before" the CAA enactment. *See id.* 4 (citing CAA § 691(f), 121 Stat. 1844  ("EFFECTIVE DATE – The amendments made by this section shall take *effect on the date of enactment of this section, and* . . . the Immigration and Nationality Act (8 U.S.C. *§ 1182(a)(3)(B)* . . . ) *as amended by these sections*, *shall apply to* . . . (2) *acts and conditions constituting a ground for inadmissibilit*y . . . *occurring* or existing *before*, on, or after *such date*.""))  (emphasis added). Thus, the Tier I designation is retroactive to plaintiff's 1999 conduct.[7]

Equally meritless is plaintiff's new retroactivity argument -- that § 691(f) does not apply to the Taliban Tier I designation of § 691(d), and instead solely applies to § 691(a), a waiver

---

[7] Plaintiff incorrectly cites *Bojnoordi v. Holder*, 757 F.3d 1075, 1077 (9th Cir. 2014), to support his assertion that assessing material support for Tier I organizations, such as the Taliban, cannot be applied retroactively, that is, for support before they are so designated. *See* Pl. Opp. 17. However, in that decision, though the court acknowledged that the Patriot Act of 2001 limited retroactivity for "certain activities" involving Tier *I* organizations, what the court actually held was: "We hold that the statutory terrorism bar applies retroactively to an alien's material support of a 'Tier *III*' terrorist organization." 757 F.3d at 1077. In any event, *Bojnoordi* is inapposite because it concerns a different terrorist group, not the Taliban. Here, at issue is not *any* Tier I designation -- inasmuch as the Taliban is not only in the unusual circumstance of having been designated as Tier I in CAA § 691(d) by Congress itself, but also Congress enacted simultaneously a specific applicable retroactivity provision at CAA § 691(f). Ordinarily, Tier I designations, such as that at issue in *Bojnoordi* for the Mojahedin-e Khalq, an Iranian terrorist group, are not made by Congress but rather are designated under 8 U.S.C. §§ 1189(a) and (d)(4) by the Secretary of State. *See* 8 U.S.C. §§ 1182(a)(3)(B)(iv)(VI)(cc), 1182(a)(3)(B)(vi)(I), 1189(a),(d); *see also Bojnoordi,* 757 F.3d at 1077 n.3 (noting that the Tier I designation at issue in that case has been made pursuant to § 1189 by the Secretary of State). Here, unlike in *Bojnoordi,* it was not the Secretary of State but rather Congress itself which enacted the designation and created the retroactivity provision that applies the designation to § 1182(a)(3)(B). Here, unlike in *Bojnoordi*, Congressional intent regarding retroactivity is plain as to the Tier I organization in question, as Congress simultaneously inserted an explicit retroactivity provision applicable to that specific designation. Thus, to the extent *Bojnoordi* in fact stands for any point about Tier I retroactivity generally, it is inapposite here.

7

provision, with the result that the government can putatively "issue [inadmissibility] waivers under § 691(a)" without "temporal limitation," as to "acts and conditions constituting a ground for disability . . . occurring or existing before [enactment]." Pl. Opp. 18-20. Plaintiff cites not a shred of legal authority for this extraordinary reading of the CAA, and indeed it defies the explicit terms of the statute. To wit, § 691(f) does not limit itself to making § 691(a) retroactive, it makes *all* the provisions of section 691 retroactive. *See* CAA § 691(f), 121 Stat. 1844 ("EFFECTIVE DATE – The *amendments made by this section* shall take effect . . . .") (emphasis added). Insofar as plaintiff at least concedes that § 691(f) makes § 691*(a)* retroactive to conduct "without temporal limitation," he effectively concedes the same as to § 691(a)'s sister provision: § 691*(d).*

Plaintiff's further argument that retroactivity can create difficulties by scooping in large swathes of the populace which may have interacted with any given organization retroactively designated "Tier I," *see* Pl. Opp. 23-25, is again simply a rehash of an argument to which USCIS had already responded in its cross-motion, *see* Def. Mem. 18 n.7. USCIS, therefore, incorporates by reference its previous argument. *See id.* Plaintiff's conflation of the Taliban with the Afghan government during 1999, the relevant period -- which is predicated on the same invalid evidentiary basis as before, *see* Pl. Opp. 24 n.11 -- is improper for the reasons as in Part 1.A.1, *supra*. Moreover, even if the Taliban were somehow the Afghan government in 1999 under U.S. law, which plaintiff has not shown, nothing prohibited Congress and the President from designating the Taliban a terrorist organization, which they explicitly did in CAA §§ 691(d) and (f).[8]

---

[8] Plaintiff's contention that the Taliban was the Afghan government in 1999 is further undercut (no doubt unintentionally) by his own flawed attempt to conflate "state sponsors of terrorism" citing statutes in Title 22 with "foreign terrorist organizations" (such as Tier I designations) under the INA in Title 8. More specifically, he argues that the Taliban could not in 1999 have been a terrorist organization because it was, purportedly, a "government," and no "state sponsors of terrorism" were purportedly designated as terrorist organizations. Pl. Opp. 24-25. Setting aside that plaintiff's argument dismisses the fact that Congress, via the CAA amendment to the INA,

8

Plaintiff also argues, incorrectly, that he did not provide "material support" to the Taliban. Although he does not dispute that his own repeated statements in the record reflect that, for 25 days, he had cooked, washed, and cleaned for the Taliban, he contends that cooking and cleaning could not constitute "material support" within the meaning of the INA because they are "irrelevant to terrorism" and not "of the same category" of material support examples delineated in the statute itself, such as false documentation or identification, weapons, including chemical, biological, or radiological weapons, a safe house, and the like. *See* Pl. Opp. 22-23. Effectively, plaintiff is arguing that the support in question must be in furtherance of terrorism.

However, the BIA – charged with interpreting the statute in the first instance -- in *In re S-K*, 23 I & N Dec. 936 (BIA 2006), expressly rejected the very same argument. The BIA "reject[ed] the respondent's assertion that there must be a link between the provision of material support to a terrorist organization and the intended use by that recipient organization of the assistance to further a terrorist activity." *See id.* at 944. The BIA reasoned that "promotion of terrorism" would be a short-sighted limitation on such support, in that it would enable a terrorist organization to solicit aid "for an ostensibly benign purpose" as to its organization, and then shift other resources in order "to promote its terrorist activities." *Id.*; *accord Hussain v. Mukasey*, 518 F.3d 534, 538 (7th Cir. 2008); *cf. Singh-Kaur v. Ashcroft*, 385 F.3d 293, 299-300 (3d Cir. 2004) (finding material support where alien had not directly committed violence but provided food and shelter to those who had).[9]

---

unequivocally retroactively designated the Taliban a Tier I terrorist organization under the INA, plaintiff's argument by its own terms -- predicated as it is on plaintiff's allegation that the Taliban was an outlier as the only government ever designated a terrorist organization -- undermines his predicate that the Taliban in fact *was* viewed as a government.

[9] Plaintiff further argues that USCIS failed to explain why his conduct constituted "material support" with the meaning of the INA. Pl. Opp. 21. However, plaintiff errs. In fact, USCIS, citing the *S.K.* decision, explicitly and correctly noted that agency precedent establishes that "material support" applies even when the nature of the support in question does not relate to the organization's terrorist actions. AR 2.

Plaintiff challenges the BIA's reasoning in *S-K,* arguing that the BIA's broad reading of material support – which plaintiff incorrectly claims was invented by the government for purposes of this motion – would mean that support "no matter how trivial" was material support and that this would improperly "read[] the word 'material' out of the statute." Pl. Opp. 21-23. Plaintiff errs. In *S-K*, the BIA addressed this very question and, while declining to issue a holding given that, in that case, the funds involved were not *de minimis,* and despite observing that giving "independent content" to the term material is "by no means frivolous," nevertheless further observed that "it is certainly plausible" that material support "was intended to . . . cover virtually all forms of assistance." 23 I&N Dec. at 945.

Importantly, however, this case does not ask the Court to consider whether "material support" includes "virtually all forms of assistance" or, as plaintiff describes it at page 21, support "no matter how trivial." Here, it is undisputed that plaintiff cooked, washed, and cleaned for the Taliban for a full 25 days. *See* AR 30, 158, 162-63; *see also* Def. Mem. 18; *see generally* Pl. Opp. In *Singh-Kaur*, 385 F.3d 293, the Third Circuit concluded that "provid[ing] food and set[ting] up tents" for meetings constituted material support, noting, *inter alia*, that such aid given to terrorists would carry criminal penalties under Title 18 of up to life imprisonment (reasoning which, notably, the BIA in *S-K* cited at 23 I&N Dec. at 944). *See id.*, 385 F.3d at 298-99, 301 & n.7; *see also Hosseini v. Duke*, 2017 WL 5710442, at *9 (E.D. Ky. Nov. 27, 2017), *on appeal* as of Dec. 6, 2017 (finding that "distributing literature" that "promoted the nonviolent aims" of the terrorist group was material support, reasoning that this "would free up other resources" of that group that "could be directed to violent activities" and would "indirectly promote their terrorist aims"); *Qubadi v. Hazuda*, 2015 WL 10939542, at *8 (D.C. Cal. Aug. 10, 2015) (finding that "clean[ing] dishes and transport[ing] food and medicine" to the Mujahideen "too, amounts to material support," *i.e.*, aside

10

from other basis of such support consisting of transporting weapons); *Annachemy v. Holder,* 733 F.3d 254, 257, 259 (9th Cir. 2013) (finding that alien who "cook[ed], dug trenches, fill[ed] sandbags, and buil[t] fences" and contributed small sum of $37 had engaged in material support) (overruled on other grounds, *Abdisalan v. Holder*, 774 F.3d 517 (9th Cir. 2014)); *cf. Jabateh v. Lynch*, 845 F.3d 332, 340-41 (7th Cir. 2017) (finding that interpreting for a terrorist at medical appointments and on social errands amounted to material support and, while noting that communication is cited in the statute, found that conduct pertinent even though it had occurred "outside the context of the group's terrorism-related activities"). *But see Ayvaz v. Holder*, 564 F. App'x 625, at *628-29 (2d Cir. May 7, 2014) (remanding to BIA to determine whether provision of a single meal in one's home to seven member of terrorist group constituted material support, noting that "the term 'material' is ambiguous," that the BIA's interpretation of the INA is entitled to *Chevron* deference, and that the BIA had not yet addressed whether a single meal qualified).

Therefore, on this independent inadmissibility ground, too, USCIS properly found plaintiff inadmissible, and plaintiff's opposition fails to establish otherwise. For this reason, alone, the Court should decline to disturb USCIS's 2016 Decision.

B. **USCIS Is Not Precluded From Denying The Adjustment Application On The Grounds Of Terrorism-Related Inadmissibility**

Plaintiff had contended in his opening brief that res judicata precludes USCIS from finding him inadmissible (and thus ineligible for adjustment of status) on the *first* inadmissibility grounds – use of a weapon – because the government could have raised this inadmissibility argument earlier, during the asylum hearing before the immigration judge. USCIS's opposition and cross-motion addressed this argument at some length, *see* Def. Mem. 20-25, and plaintiff does not

11

dispute USCIS's points on this issue, *see generally* Pl. Opp.[10]

Instead, plaintiff's opposition brief abruptly switches to an altogether different preclusion doctrine, collateral estoppel. *See* Pl. Opp. 1-5, 8-12. Oddly, instead of admitting this, plaintiff asserts: "*As [plaintiff] demonstrated in his opening brief*, the [use of a weapon grounds for inadmissibility] is, despite the denials by the government, barred by *collateral estoppel*." *Id.* at 2 (emphasis added). However, plaintiff's opening brief cites the res judicata doctrine no fewer than eight times and cites the collateral estoppel doctrine not even once. In a footnote in his opposition brief, plaintiff declares that he "inadvertently mislabeled" the doctrine in his opening brief "res judicata." *Id.* at 2 n.2. This, too, is incorrect. The claim of "inadvertent mislabeling" is belied by the case he cites in his opening brief, *Channer v. DHS*, 527 F.3d 275 (2d Cir. 2008), which in fact applies res judicata, and not collateral estoppel. The claim of "inadvertent mislabeling" is further belied by his description and application of the elements of res judicata – such as the element that "the claims asserted in the subsequent action were *or could have been* raised in the prior action" – a feature solely of res judicata. *See* Def. Mem. 21 (citing plaintiff's opening brief). Thus, it is clear that in his opening brief plaintiff *was* arguing preclusion based on res judicata.

---

[10]Although USCIS's cross-motion set forth numerous arguments as to the inapplicability of res judicata, *see* Def. Mem. 20-25, plaintiff refers to only one such argument -- that res judicata prerequisites had not been met here -- and at that in a limited and confused way, *see* Pl. Opp. 6-7. Not only does plaintiff's opposition not directly address USCIS's reasoning as to why those prerequisites had not been met, but also plaintiff's opposition brief on even this one argument mischaracterizes USCIS's cross-motion as "opposing the application of issue preclusion," *see* Pl. Opp. 6, when, in fact, USCIS was addressing plaintiff's assertion of res judicata, *see* Def. Mem. 20-25, which is *claim* -- not issue -- preclusion. Similarly, in purportedly responding to USCIS's argument, plaintiff mischaracterizes the Second Circuit's analysis in *Channer v. DHS*, 527 F.3d 275 (2d Cir. 2008) as concerning collateral estoppel -- "Even assuming *Channer* had the authority to modify the collateral estoppel doctrine . . ." *see* Pl. Opp. 7 -- when, in fact, that case applied res judicata, not collateral estoppel. *See id.* 527 F.3d at 278-80. Thus, plaintiff's opposition brief fails to address most of USCIS's res judicata arguments, and to the limited extent plaintiff touches on even one, his analysis misconstrues it as concerning collateral estoppel.

In any event, plaintiff's change of tack is unavailing as, even under the collateral estoppel doctrine, he cannot establish that USCIS's determination of weapon-use-based inadmissibility should be precluded. Plaintiff predicates his collateral estoppel argument, effectively, on the following argument: USCIS was precluded from reaching the weapon-use basis for inadmissibility because, at the earlier asylum stage, the applicant also has to be admissible, the same law as to weapon-use inadmissibility applied, the same facts as to weapon-use were then known, and the same parties were involved and had a "full and fair" opportunity to litigate. *See* Pl. Opp. 2-5.

However, this argument is fatally flawed. In the Second Circuit, it has long been settled that collateral estoppel will "preclude parties from relitigating issues only if": (1) the issues in both proceedings are identical, (2) "the issue in the prior proceeding was actually litigated and actually decided," (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. *See In re PCH Assoc.*, 949 F.2d 585, 593 (2d Cir. 1991) (citing 18 *Fed. Prac. & Proc.* § 4416 and *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 28, 44 (2d Cir. 1986)); *accord NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999) (collecting cases); *Veleron Holding, BV v. Stanley*, 2014 WL 1569610, at *10 (S.D.N.Y. Apr. 16, 2014) (citation omitted).

The Second Circuit has explicitly emphasized:

> [I]t must be remembered that for the doctrine to be properly invoked, the particular issue currently in dispute must have been "both actually litigated and actually decided."

*In re PCH*, 949 F.2d at 593 (citations omitted); *see also Balderman v. VA*, 870 F.2d 57, 62 (2d Cir. 1989).[11] Notably, collateral estoppel diverges from res judicata on this point. To wit, res judicata

---

[11] Plaintiff appears to argue that *Norris v. Grosvenor Mark'g Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986), and *Postlewaite v. McGraw Hill Inc.*, 333 F.3d 42, 48 (2d Cir. 2003) establish that for collateral estoppel, no "actual decision" is needed if the "necessary implication" is "contained in

13

does *not* require a matter to have been "actually litigated," only that it *could* have been so. *Balderman*, 870 F.2d at 62. However, collateral estoppel (issue preclusion) prevents relitigation of an issue "that was raised, litigated and actually decided" by a judgment in the prior proceeding, regardless of whether the two suits are based on the same cause of action. *Id* (citations omitted).

It is the burden of the party seeking to impose collateral estoppel to establish that it is entitled to such relief by establishing each element. *See, e.g., Bear Stearns Securities, Corp. v. 1109580 Ontario, Inc.,* 409 F.3d 87, 93 (2d Cir. 2005); *In re Air Disaster at Lockerbie, Scotland*, 811 F. Supp. 89, 91-92 (E.D.N.Y. 1993).

A recent case similar to this one, *Janjua v. Neufeld*, 2017 WL 2876116 (N.D. Cal. Jul. 6, 2017), *on appeal* as of Aug. 4, 2017, is instructive. There, as here, an asylee sought an adjustment of status. *Id.* at *2. There, as here, adjustment was denied on the grounds of terrorism-activity-based inadmissibility. *Id.* at *2-3. There, as here, the plaintiff argued that USCIS was collaterally estopped from making that inadmissibility finding, because inadmissibility would necessarily have been decided by the immigration judge at the asylum stage. *Id.* at *3-4. There, the court agreed that such a matter would have been necessarily decided at the asylum stage. *Id.* at *9. However, the court held that "the 'necessarily decided' element of collateral estoppel *cannot be conflated with* the 'actually litigated' element of collateral estoppel." *Id.* (citations omitted) (emphasis

---

that which has been explicitly decided." Pl. Opp. 4 n.5. Any such argument is misplaced. As an initial matter, this argument might address "actually decided," but does not address the "actually litigated" requirement. In any event, the cases are inapposite. In *Norris*, which was a diversity case addressing estoppel as to arbitration, the collateral estoppel law applied was not federal but that of New York. *See Norris*, 803 F.2d at 1285. *Postlewaite* also appears at least in part to apply New York law. As the Second Circuit has explained, "New York collateral estoppel doctrine lacks the 'actual litigation' prong." *In re Sokol*, 113 F.3d 303, 306 (2d Cir. 1997). ("Actual litigation is not a requirement for collateral estoppel under New York law."); *accord PenneCom BV v. Merrill Lynch & Co*., 372 F.3d 488, 491 (2d Cir. 2004) ("The New York law of collateral estoppel is a two part test: . . . the issue was necessary to the resolution of the prior action, and the party against who estoppel is invoked had a full and fair opportunity to contest the issue in the previous litigation.").

14

added).The court further held that "actually litigated" meant that the issue was "'contested by the parties and submitted for determination by the court.'" *Id.* at *10 (collecting authority). Because there the government had *not* argued at the asylum stage that Muhajir Qaumi Movement (MQM) was a terrorist organization, even though the government "did make reference to MQM and violence," and because plaintiff had never contended at the asylum stage that MQM was not a terrorist organization, the court concluded that terrorism-activity inadmissibility had been neither "contested" nor "submitted" at that stage. *Id.* at *11. Accordingly, the court held that USCIS was not collaterally estopped from finding the asylee later inadmissible on terrorism-activity-based grounds, at the time of the asylee's subsequent application for adjustment of status. *Id.*

Here, as in *Janjua*, plaintiff has not met his burden of establishing that the government "actually litigated" the question of weapon-use based inadmissibility at the asylum stage, let alone that the immigration judge "actually decided" that issue. Plaintiff's sole proffered basis for "actually litigating" the issue is his argument that, since he had been granted asylum, the immigration judge must have "actually litigated his inadmissibility under this section, because if he was inadmissible . . . he would be ineligible for asylum." Pl. Opp. 4. Plaintiff's argument improperly conflates the "actually litigated" element (No. 2) with the "necessary to the decision" element (No. 4), arguing that because No. 4 is the case, that also establishes No. 2. Plaintiff's argument also fails to recognize that the "actual litigation" aspect refers to actions by the parties, not by the trier of fact. Such conflation of elements was explicitly held improper in *Janjua,* 2017 WL 2876116, at *9, in assessing a grant of asylum, and is similarly improper under general collateral estoppel Second Circuit case law, which holds that "actual litigation" is required for collateral estoppel. *See In re Great Atlantic & Pacific Tea Co., Inc.*, 526 F. App'x 25, 28 (2d Cir. 2013) (holding that because parties to previous litigation "has assumed the existence" of a consent

15

requirement, that issue had "not [been] actually litigated and decided in the prior proceeding as would be required for collateral estoppel to bar its relitigation here") (internal quotation marks omitted).

Here, as in *Janjua*, 2017 WL 2876116, at *11, plaintiff points to no part of the record reflecting that, at the March 2000 asylum hearing at which asylum was granted, the government raised, cross-examined plaintiff concerning, or otherwise actually litigated, terrorism-activity-based inadmissibility. *See generally* Pl. Opp. To the contrary, the Notice to Appear requiring plaintiff to appear at the proceedings where his asylum claim was addressed, AR 176, did not raise terrorism-related grounds of inadmissibility, only inadmissibility owing to lack of proper entry documents. Further, to the extent that the matter of plaintiff's army service with the Taliban appears in the record prior to the grant of asylum -- as reflected by such exemplars as his affidavit submitted in support of his asylum claim, and his statements at the airport raising intent to seek asylum, AR 158, 170, 185 -- he cites his impressment by the Taliban as evidence of his credible fear of persecution by the Taliban, and the record does not reflect that he was asked about terrorism-activity-based inadmissibility. Furthermore, the immigration judge's order granting asylum notes only that asylum was granted, and does not discuss any reasons or findings or what was argued. AR 87. In sum, the record contravenes – and at a minimum does not support – the argument that the issue of plaintiff's inadmissibility on terrorist-activity grounds was actually litigated and actually decided at the asylum stage.[12] Accordingly, here as in *Janjua*, USCIS is not

---

[12] Plaintiff cites a number of distinguishable cases in purported support of his argument that USCIS is collaterally estopped from finding inadmissibility on weapon-use at the status-adjustment stage. *See* Pl. Opp. 10 n.6, 12. As the *Janjua* court itself noted in distinguishing two of those cases, *Islam v. DHS*, 136. F. Supp. 3d 1088, 1092 (N.D. Cal. Sept. 25, 2015) and *Amrollah v. Napolitano*, 710 F.3d 568, 571 (5th Cir. 2013), the record in those cases reflected that terrorism-based inadmissibility was "actually litigated" at the asylum stage, because the record showed, in the

16

collaterally estopped from assessing admissibility on weapon-use grounds in the 2016 Decision.

In addition, the INA specifically and expressly *requires* a finding of inadmissibility "at the time of examination for adjustment." *See* 8 U.S.C. § 1159(b)(5). That provision does *not* limit the assessment required "at the time of examination for adjustment" to newly discovered facts or to alterations in the legal definition of terrorism activity. *See* 8 U.S.C. § 1159(b)(5). Moreover, USCIS is not permitted to waive terrorism-related inadmissibility grounds in determining whether to adjust the status of an asylee. *See* 8 U.S.C. § 1159(c).

In sum, USCIS was not collaterally estopped from trying to – and indeed is statutorily required to – evaluate plaintiff's inadmissibility for use of a weapon "at the time of examination for adjustment," and plaintiff has not established otherwise. In any event, even if USCIS were so

---

former case, that the parties "actually argued" inadmissibility and cross-examined plaintiff thereon during the asylum hearing, and, in the latter case, the litigants cross-examined plaintiff "extensively" about terrorism activity during his asylum hearing and cited it during closing argument. *Janjua* at *11. Here, plaintiff points to no such circumstances in the record, as set forth in the text above. Equally distinguishable is *Sile v. Napolitano,* 2010 WL 1912645 (N.D. Ill. May 12, 2016), which not only addresses a different matter – firm resettlement in another country, as opposed to terrorism-activity-based inadmissibility – but also, more importantly, expressly found there, unlike here, that the parties had "actually litigated" at the asylum stage the same firm resettlement question that later resulted in a denial of adjustment of status. *Sile*, at *3. The court noted that even though the transcript of the earlier, asylum stage was missing from the record, the record reflected the charging document from that stage, which contained the basis for the firm resettlement argument. *Id*. Here, unlike in *Sile*, the charging document at the asylum stage, the NTA, mentions only inadmissibility owing to invalid entry documents, and not owing to terrorism-activity. AR 176. Thus, unlike in *Sile,* the record here does not support that the issue was "actually litigated" at the asylum stage. The remaining two decisions cited by plaintiff, *Khan v. Johnson*, 160 F. Supp. 3d 1199 (C.D Cal. 2016) and *Aldarwich v. Hazuda*, 2016 WL 1089173, at *11 (C.D. Cal. Mar. 18, 2016), conflate the "actually litigated" requirement with the "necessarily decided" requirement, reasoning that since admissibility is one asylum criterion, if asylum was granted it "must have been" actually litigated. This reasoning goes against the collateral estoppel doctrine of this Circuit, which, as set forth in the text above, emphasizes that "actually litigated" and "necessarily decided" are two independent elements that must be separately established (except in cases where New York law on collateral estoppel governs, see note 11 *supra*). Therefore, *Khan* and *Aldarwich*, district court cases from the Ninth Circuit, are inapposite, or at least distinguishable, inasmuch as they reach their adverse conclusion by applying a less stringent standard for collateral estoppel than that used in this Circuit.

estopped, plaintiff would *still* be inadmissible on the separate and wholly independent "material support" grounds, as to which plaintiff expressly concedes, *see* Pl. Opp. 2 n.3, that he makes no estoppel argument.

For all of these reasons, the 2016 Decision finding plaintiff inadmissible, and consequently denying adjustment of status, should not be disturbed.

## CONCLUSION

For the foregoing reasons and those set forth in its opening brief, USCIS respectfully requests that the Court: (i) grant its cross-motion for summary judgment, affirming USCIS's decision, and dismiss this action with prejudice; (ii) deny plaintiff's motion for summary judgment; and (iii) grant such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York  
       January 29, 2018

RICHARD P. DONOGHUE  
United States Attorney  
*Counsel for Defendant*  
Eastern District of New York  
271 Cadman Plaza East, 7th Fl.  
Brooklyn, New York 11201

By: /s/ Layaliza Soloveichik  
LAYALIZA SOLOVEICHIK  
Assistant United States Attorney  
(718) 254-6298  
layaliza.soloveichik@usdoj.gov